UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MICHAEL MCDOWELL,                    )
                                     )
    Plaintiff,                   )
                                     )
v.                                   )   Case No. 5:18-cv-1998-GMB
                                     )
ANDREW M. SAUL,[1] Commissioner,     )
Social Security Administration,      )
                                     )
    Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael McDowell filed an application for disability insurance benefits in 2015. His alleged disability onset date is April 15, 2015. McDowell's application was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on November 28, 2017 and denied McDowell's claims on January 17, 2018. McDowell requested a review of the ALJ's decision by the Appeals Council, which declined review on October 16, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of October 16, 2018.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

McDowell's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I.  STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The claimant bears the burden of proving that he is disabled, and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  FACTUAL BACKGROUND

Michael McDowell lives in Higdon, Alabama with his wife. R. 44.  He was 56 years old at the time of the ALJ's decision. R. 44.  His primary complaints are arthritis, depression, and a back injury. R. 219

McDowell graduated from high school. R. 45.  He also took a welding class in high school. R. 45.  He worked as a printing machine operator at Rock Ten Company from 1983 until the company went out of business in 2009. R. 50.  After that, he worked in carpentry. R. 53.  He worked as a printer operator for M&M Industry from January 2013 to May 2014. R. 52.  McDowell last worked as a parts deliverer for Advance Auto Parts. R. 46.

McDowell's medical record is not extensive.  He submitted treatment records

from Dr. Andrew Hodges spanning May 2016 through October 2017. R. 316–43. He also submitted hospital records from Highland Medical Center from encounters on May 30, 2017 and October 23, 2017. R. 344–59. The record also contains a consultative evaluation performed by Dr. John Larry. R. 302–15. Dr. Robert Estock and Dr. Robert Heilpern reviewed McDowell's medical records and developed an opinion for McDowell's disability insurance benefits claim at the initial level. R. 82–95.

The ALJ held a hearing in McDowell's case on November 28, 2017. R. 31. During the hearing, the ALJ posed the following hypothetical to a Vocational Expert ("VE"):

> For the following hypothetical questions, please consider an individual the same age, education and work experience as Mr. McDowell. For hypothetical number one, I would like you to consider that such an individual can lift and carry 50 pounds occasionally, and 25 pounds frequently. Can stand and or walk with normal breaks for a total of six hours in an eight-hour work day. Sit with normal breaks for a total of six hours in an eight-hour work day. Pushing and pulling is the same as for lifting and carrying. Frequently climb ramps and stairs, never climb ladders, ropes and scaffolds. Frequently balance, stoop, kneel, crouch and crawl. Should avoid concentrated exposure to moving unguarded machinery and unprotected heights.

R. 76–77. The VE testified that this hypothetical individual could perform McDowell's past work as an auto part deliverer. R. 77. The VE also testified that this individual could perform other work in the national economy. R. 77. Specifically, the VE testified that this individual could work as a hand packager,

dishwasher, and janitor. R. 77.

The ALJ then asked whether the hypothetical individual could perform work if limited to reaching frequently at the shoulder level with the right upper extremity, if only able to climb ramps and stairs occasionally, and if required to avoid concentrated exposure to extreme cold. R. 77–78. The VE testified that this individual could not perform any of McDowell's past work, but that he could perform other occupations in the national economy—specifically, hand packager, dishwasher, or janitor. R. 78. The ALJ also posed the following hypothetical:

> Go back to hypothetical number one and make some changes there. Again, we're going to say occasional with the ramps and stairs, avoid concentrated exposure to extreme cold. Frequently reach shoulder level with right upper extremities and frequently handle, finger and feel.

R. 79. The VE testified that this individual could perform work as a hand packager, dishwasher, or janitor, but would be precluded from McDowell's past auto parts deliverer job because of the need to avoid exposure to extreme cold. R. 79. The VE further testified that this hypothetical individual could not find employment if he would be working off task 15 percent of the day, or if he would be expected to miss more than one day of work per month on a sustained basis. R. 78.

The ALJ issued her decision on January 17, 2018. R. 20. Under step one of the five-step evaluation process, the ALJ found that McDowell has not engaged in substantial gainful activity since April 15, 2015. R. 12. The ALJ concluded that McDowell suffers from the severe impairment of degenerative disc disease under 20

C.F.R. § 404.1520(c). R. 12.  The ALJ concluded at step three of the analysis that none of McDowell's impairments satisfy or medically equal the severity of one of those listed in the applicable regulations. R. 14.

At steps four and five, the ALJ found that McDowell has the residual functional capacity ("RFC") to perform medium level work with some limitations.[2] Specifically, the ALJ determined the following:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform medium work . . . except the claimant can lift carry fifty pounds occasionally and twenty-five pounds frequently.  He can stand and/or walk (with normal breaks) approximately six hours in an eight-hour workday.  The claimant can push/pull fifty pounds occasionally and twenty-five pounds frequently. The claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  He can frequently balance, stoop, kneel, crouch, and crawl.  The claimant should avoid all exposure to hazards such as moving unguarded machinery and unprotected heights.

R. 15.  Ultimately, the ALJ determined that McDowell is able to perform past relevant work as an auto parts deliverer at the medium exertional level. R. 18. Therefore, the ALJ concluded that McDowell is not disabled within the meaning of the Social Security Act. R. 20.  Based on these findings, she denied McDowell's claims. R. 20.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

# IV. DISCUSSION

The court construes McDowell's brief as presenting three issues on appeal: (1) the ALJ erred in determining that McDowell's RFC permits him to perform medium level work; (2) the ALJ erred in determining that McDowell is not disabled according to Grid Rule 202.06; and (3) the ALJ improperly applied the Eleventh Circuit pain standard. Doc. 14. The court finds that these contentions are without merit.

## A.    Residual Functional Capacity

McDowell asserts that his RFC limits him to less than medium work. Doc. 14 at 12. "[T]he ALJ has the responsibility for determining a claimant's RFC." *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). To do so, the ALJ must follow a two-step process. First, she must determine whether there is a physical or mental impairment that could produce the claimant's symptoms. R. 15. Then, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which these symptoms limit the claimant's functional capacity. R. 15.

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks

omitted).  There is no requirement that the RFC assessment "be supported by the assessment of an examining or treating physician." *Id.* at 1055–56.  And the ALJ need not "specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, *i.e.*, where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013).  "The question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r, Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).  The "ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016).

Here, there is substantial evidence to support the ALJ's finding that McDowell had the RFC to perform a limited range of medium work.  After considering the evidence, the ALJ found that McDowell's medically determinable impairments could cause his alleged symptoms. R. 16.  But the ALJ determined that the intensity, persistence, and limiting effects of his symptoms allowed for work at the medium exertional level. R. 15.

McDowell argues that Dr. John Larry's opinion shows that he is unable to

perform medium work. Doc. 14 at 12. McDowell notes that Dr. Larry diagnosed slight subluxation and mild facet arthropathy. Doc. 14 at 12. McDowell also emphasizes that Dr. Larry found decreased muscle strength in his right extremities. Doc. 12 at 14.

Additionally, McDowell points to his own testimony that he has burning pain in his feet, that he must sit down to elevate his legs, and that he encounters difficulties when walking on concrete or asphalt and climbing stairs. Doc. 12 at 14. However, "[e]ven if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin*, 894 at 1529. Here, the ALJ's decision is supported by substantial evidence.

The ALJ relied on Dr. Larry's opinion to support her conclusion that McDowell is capable of performing a limited range of medium work. The ALJ noted that while Dr. Larry found slight subluxation and mild facet arthropathy, Dr. Larry determined that McDowell had only mild degenerative changes for someone his age. R. 16 & 315. The ALJ emphasized that Dr. Larry found no acute findings. R. 16 & 315. The ALJ also highlighted that Dr. Larry found no other musculoskeletal abnormalities despite decreased muscle strength in the right upper extremity. R. 16 & 305.

Additionally, the ALJ bolstered her decision with treatment records from Dr.

Andrew Hodges, McDowell's treating physician. The ALJ underscored that Dr. Hodges ultimately concluded that McDowell did not have rheumatoid arthritis despite finding crepitus, effusion, and tenderness. R. 16. The ALJ stressed that Dr. Hodges did not recommend physical or intensive therapy, and treated McDowell's symptoms only with medication. R. 16. The ALJ also pointed out that the record does not indicate that McDowell ever saw a rheumatologist after Dr. Hodges referring him to one. R. 16. Additionally, the ALJ considered X-rays ordered by Dr. Hodges, which demonstrated that McDowell suffered from a heel spur but no acute abnormality. R. 16–17 & 352.

Without any other medical evidence regarding McDowell's mental health in the record, the ALJ supported her RFC finding with the opinion of state agency medical consultant Dr. Robert Estock. Dr. Estock determined that McDowell had mild restrictions in his activities of daily living and no restrictions in social functioning or maintaining concentration, persistence, and pace. R. 17 & 88. The ALJ emphasized that McDowell had not undergone any formal mental health treatment. R. 17.

The ALJ also relied on the opinion of state agency medical consultant Dr. Robert Heilpern. The ALJ considered Dr. Heilpern's opinion that McDowell could frequently lift and carry 25 pounds, could stand, walk, or sit for six hours in an eight-hour workday, and could frequently balance, stoop, kneel, crouch, and crawl. R. 17

& 90–93.  The ALJ also noted Dr. Heilpern's determination that McDowell could lift 50 pounds occasionally and could frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. R. 17 & 90–93.

Using this evidence, along with the function reports of McDowell and his wife, the ALJ concluded that McDowell has the RFC to perform a limited range of medium work.  This determination is supported by the substantial evidence detailed above, and the ALJ provided a sufficient rationale to link that evidence to her conclusion. *Eaton*, 180 F. Supp. 3d at 1055.  Accordingly, McDowell's contention that his RFC should be limited to less than medium work is unavailing.[3]

## C.     Grid Rule 202.06

McDowell contends that he is disabled according to Grid Rule 202.06. Doc. 14 at 12.  The Social Security Administration has established Medical-Vocational Guidelines, commonly known as "the Grids," upon which the Commissioner may rely in determining whether work exists in the national economy that the claimant is able to perform. *See Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 635 (11th Cir. 2007).  The ALJ should not rely exclusively on the Grids where the claimant is unable to perform a full range of work at a given RFC or where the claimant suffers

---

[3] McDowell also asserts that the ALJ erred in finding that he is capable of performing his past relevant work of auto parts deliverer at the medium exertional level. Doc. 14 at 10.  As discussed above, the ALJ supported the medium exertional level RFC finding with substantial evidence. Additionally, she explained that the Dictionary of Occupational Titles and the VE classify McDowell's past relevant work at the medium exertional level. R. 18.  Accordingly, this assertion is due to be overruled.

from non-exertional impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). In other words, the Commissioner may apply the Grids to a claimant's case if the claimant can perform all or substantially all the exertional demands at a given level of exertion. R. 19. Exertional impairments are those that place limits on individual's ability to meet job strength requirements. *See Foote v. Charter*, 67 F.3d 1553, 1559 (11th Cir. 1995).

Under Grid Rule 202.06, a person of advanced age limited to light work is disabled if that person has a high school education or more, his education level does not provide for direct entry into skilled work, and he has skilled or semi-skilled skills that are non-transferrable. 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.06. McDowell asserts that he is disabled under Grid Rule 202.06, but this Grid is not applicable to McDowell's case. As summarized above, Grid Rule 202.06 applies to a claimant limited to performing light work. This court has found that substantial evidence supports the ALJ's finding that McDowell is capable of performing medium work with some exertional limitations. Accordingly, McDowell does not satisfy the criteria of Rule 202.06.

## D.  Eleventh Circuit Pain Standard

McDowell asserts that his subjective testimony satisfies the pain standard, and that the ALJ's reasons for discrediting his testimony are inadequate. Doc. 14 at 14. McDowell testified that his arthritis aches constantly. R. 64–66. His arthritis is

painful in the summer but the pain is more acute in the winter. R. 64. It prevents him from running or from standing for extended periods of time. R. 67–68. He has complained to doctors that his pain is moderately severe. R. 16.

The Social Security Regulations provide that a claimant's subjective complaints of pain cannot alone establish disability. Rather, the regulations describe additional objective evidence that permits a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. When establishing disability in this manner, a claimant must satisfy two parts of the Eleventh Circuit's three-part pain standard: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

"[I]f a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony. *Crow v. Colvin*, 36 F. Supp. 3d 1255, 1259 (N.D. Ala. 2014). A claimant's testimony that is supported by medical evidence and satisfies the pain standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921

F.2d 1221, 1223 (11th Cir. 1991). But an ALJ is free to determine that a claimant's testimony is not credible. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Crow*, 36 F. Supp. 3d at 1259. Thus, after the pain standard is satisfied, the "ALJ must make credibility determinations regarding a claimant's claims of pain" to determine whether the claimant is truly disabled. *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 833 (11th Cir. 2006); *Crow*, 36 F. Supp. 3d at 1259.

When determining the credibility of a claimant's testimony as to her symptoms, the ALJ must follow a two-step process: "(1) first determine if the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and, if so (2) evaluate the intensity and persistence of the claimant's symptoms such as pain and determine the extent to which the claimant's symptoms limit his or her ability to perform work-related activities." *Cooley v. Comm'r of Soc. Sec.*, 2019 WL 211437, at *2 (M.D. Fla. Jan. 16, 2019). "In considering the intensity, persistence, and limiting effects of the claimant's symptoms, the ALJ is to examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *3 (internal citation and quotation omitted). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so."

*Wilson*, 284 F.2d at 1255. "The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court." *Carrell v. Berryhill*, 2019 WL 1696698, at *4 (N.D. Ala. Apr. 17, 2019). Otherwise, the testimony will be accepted as true. *Id.* The pain standard requires that the articulated reasons be supported by substantial evidence. *Hale*, 831 F.2d at 1012 ("Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence."). In any event, the "question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ found that McDowell's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 16. Thus, the ALJ concluded that McDowell satisfied the pain standard. But the ALJ discredited McDowell's subjective testimony, determining that McDowell's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 16. Neither party disputes that the ALJ articulated explicit reasons for discrediting McDowell's testimony. Rather the question before the court is whether

those reasons are supported by substantial evidence.[4]  They are.

The ALJ specifically identified several pieces of evidence to support her articulated credibility finding.  For example, the ALJ found that the objective diagnostic evidence from Dr. John Larry did not support McDowell's complaints of back pain and arthritis pain.  Dr. Larry performed a consultative examination of McDowell on July 27, 2015.  He found that McDowell had no kyphosis and that his back musculature appeared normal to inspection and palpation. R. 305.  McDowell was able to flex his upper body at the waist by 60 degrees and hyperextend by 25 degrees. R. 305.  His straight leg test was normal. R. 305.  Dr. Larry determined that McDowell did suffer from right shoulder pain, but that he did not suffer from enlarged, swollen, red, warm, tender, or deformed joints. R. 305–06.  McDowell did not need to use a cane, braces, crutches, wheelchair, or other assistive devices. R. 303.

Dr. Larry ordered an x-ray of McDowell's lumbar spine and found that McDowell had only "very slight posterior subluxation of L2 with respect to L3 . . . which is felt to be degenerative." R. 315.  Dr. Larry found only mild facet arthropathy and spurring. R. 315.  He also determined that McDowell had minimal

---

[4] Although the ALJ did not refer explicitly to the hospital records when discounting McDowell's allegations of pain, these records also support the ALJ's conclusion that McDowell's complaints of pain are not entirely consistent with the medical evidence.  Additionally, some of the hospital visits are referrals by Dr. Hodges, on whom the ALJ did rely.  For example, on May 30, 2017, Dr. Hodges referred McDowell to have his hips and knees examined.  No acute abnormality was found. R. 345 & 349.

areas of disc narrowing, and no bone destruction. R. 315.  Based on the x-ray results and McDowell's age, Dr. Larry concluded that these were only mild degenerative changes with no acute findings. R. 315.  Dr. Larry concluded that McDowell's ability to sit, stand, walk, lift, carry, bend, squat, and kneel was somewhat impaired by joint and spine pain complaints. R. 307.  However, Dr. Larry also concluded that McDowell's ability to reach, see, hear, speak, understand, and manipulate small objects was unimpaired. R. 307.

The ALJ also noted that the treatment records from Dr. Andrew Hodges do not contain objective findings to support McDowell's complaints of disabling pain. R. 16.  McDowell visited Dr. Hodges with complaints of arthritis pain, and Dr. Hodges diagnosed him with generalized osteoarthritis, but this diagnosis appears to be based on McDowell's subjective complaints and is not supported by objective findings.  For example, on May 12, 2016, McDowell visited Dr. Hodges with severe joint pain. R. 318.  However, upon examination, Dr. Hodges found that McDowell had grossly normal tone and muscle strength, and full painless range of motion of all major muscle groups and joints. R. 319–20.  He injected Kenalog into McDowell's right hip and prescribed the arthritis medicine Mobic, but did not refer McDowell for more serious treatment. R. 319.  Although Dr. Hodges diagnosed McDowell with generalized osteoarthritis, he concluded that McDowell did not present with any abnormalities. R. 320.  In November 2016, McDowell went back

to Dr. Hodges with complaints of chest pain. R. 321.  He did not complain about joint pain. R. 321.  Dr. Hodges refilled McDowell's Tramadol, which he prescribed for "severe arthritis." R. 322.  However, there is no evidence indicating that Tramadol insufficiently controlled McDowell's arthritis. R. 322.  Treatment notes from a December 2016 visit reveal similar findings. R. 324–25.

McDowell did not return to Dr. Hodges until April 24, 2017. R. 326.  On this date, McDowell complained about osteoarthritis. R. 326.  Dr. Hodges noted crepitus, tenderness, effusion, and mild tenosynovitis. R. 327.  Dr. Hodges switched McDowell from Mobic to Diclofenac since the Mobic was not strong enough. R. 327.  Dr. Hodges scheduled lab testing and instructed McDowell to return in one week for a follow up. R. 327.  During the follow up visit, Dr. Hodges ordered x-rays of McDowell's ankle, feet, hips, and knee. R. 330.  Dr. Hodges found crepitus and effusion and noted that McDowell had tenderness in the right shoulder, bilateral hips, bilateral knees, and bilateral ankles. R. 330.  However, Dr. Hodges concluded that there was no evidence of rheumatoid arthritis and remarked that he was considering a diagnosis of fibromyalgia.[5] R. 330.  He prescribed Tramadol for generalized osteoarthritis. R. 330.  During a visit on May 30, 3017, Dr. Hodges again noted crepitus, tenderness, and effusion, and assessed that McDowell had fibromyalgia.

---

[5] Although there is some indication in the record that McDowell might suffer from fibromyalgia, McDowell does not allege that he suffers from this disorder or that fibromyalgia prevents him from working.

R. 333. Dr. Hodges referred McDowell to a rheumatologist (R. 333), but the lack of rheumatology records suggests that McDowell never followed up on this recommendation. McDowell also submitted treatment notes and lab tests from Dr. Hodges for December 2016 and October 2017, but during these visits he complained only of sinus trouble. R. 335–41. McDowell continued to treat with Tramadol, and there is no evidence in the record indicating that this prescription was an ineffective remedy for McDowell's arthritis and back pain. R. 336.

On this record, the ALJ properly evaluated McDowell's pain allegations consistent with the pain standard. She determined that McDowell had conditions that satisfied the pain standard but rejected the alleged severity of symptoms associated with those conditions. The court finds that the ALJ articulated reasons for discounting McDowell's pain allegations and that substantial evidence supports the her reasons for doing so. *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."). Accordingly, the Commissioner's decision is due to be affirmed.

## V. CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE and ORDERED on March 13, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE